MIX (BAKER v.). See Cases Nos. 774 and 775.

MIX (LAMSON v.). See Case No. 8,034.

## Case No. 9,677.

### MIX v. PERKINS.

[3 App. Com'r. Pat. 196.]

Circuit Court, District of Columbia. Aug. 29, 1859.

PATENTS—LATER INVENTOR—MORE DURABLE PRODUCT—DELAY—NOTICE OF CLAIM.

[1. Priority of invention entitling the inventor to a patent is not affected by the fact that a later inventor first perfected machines for manufacturing the patented product.]

[2. The fact that a subsequent equivalent invention makes a more durable product will not affect the question of priority.]

[3. An inventor is not prejudiced by a delay in applying for a patent where he is diligently experimenting as to other forms of the same invention, and machinery to perfect it, especially as against one having notice of his claim.]

Appeal from the decision of the commissioner of patents, refusing to grant a patent to [Garry J.] Mix, for his invention, of an improvement in the construction of iron spoons, and awarding priority of invention to R. B. Perkins.

MORSELL, Circuit Judge. The application by appellant for a patent is dated February 15, 1858, and filed February 22. He states his claim: "First. The method substantially as therein described of making the handles of iron spoons. Second. Forming a tongue D, upon the bowl blank, and corresponding recess or inlet D, upon the handle or vice versa, substantially as and for the purpose therein set forth." The first clause of this specification was afterwards stricken out by an amendment. He states particularly various modes by which to unite the bowl to the handle, and amongst them the one for which he claims the patent in this case. This, I think, is substantially the same with the description of the invention for which a patent was granted to Perkins, bearing date October 27, 1857, the peculiar features of which the examiner states to be "consisting of beveling the V. or other shaped tongue, and turning over the lips of the recess which is formed to receive said tongue, the closing of the joint being effected by a rivet, struck by a drop and die, and finished by turning." The report further states that "this interference has been asked for by Mix to enable him to prove invention in making spoons in the manner set forth, and upon which invention he believes he has suffered from infringement at the hands of Perkins." He proceeds to state what he conceives to be the testimony. He says: "According to the testimony, E. I. Bull, machinist for Mix, made dies for a spoon having a V shaped tongue sometime during the last half of May, 1857, using as a pattern a spoon made by Marcy, another witness, in December, 1856. A cavity in the end of the handle received a tongue formed on the bowl of the spoon, the two being secured by riveting and soldering. But few spoons were made by these dies, the manufacture of them being abandoned, for others having no tongue, nor corresponding cavity. These latter were found to be defective, and the original plan was again resorted to for supplying the market. Also, according to the testimony, Perkins directed his machinist H. W. Cook, about the last of March or first of April, 1857 (subsequently proven to be April 8) to prepare dies for making similar spoons. The dies were finished about May 1st, and spoons were immediately made from them to the extent of several hundred gross. The dies made by Cook were different from those above mentioned. They provided for the ordinary V tongue and corresponding cavity, but at the same time beveled the edge of the tongue to admit of the closing over of the edges of the recess or cavity in the handles. In the manufacture of the spoons a drop and die were found necessary to effect this closing over in connection with the riveting. This difference between the dies and manufacture is testified to by Marcy, one of the witnesses on the part of Mix. Three peculiar features are secured to Perkins in his patent above referred to. From all the above it is inferred that Perkins was the first to make spoons in the peculiar manner described in his patent; and so far is now as before fully entitled to its use and benefit. In so far also as the application of Mix describes and claims the features peculiar to Perkins' patent it is rejected without prejudice to any remaining matter of novelty which may be contained therein." His report was adopted and confirmed and priority of invention adjudged to Perkins by the commissioner, and the application of Mix, so far as it conflicts with the patent of Perkins, rejected.

To this decision six reasons of appeal were filed by the appellant. They are thought specially to cover all the grounds of objection raised by said report, and will be substantially considered, and therefore are not particularly stated. In the commissioner's reply to the reasons an allusion is made to the application of Mix dated Oct. 27th, 1857, in which case it is said with respect to the V shaped joint in itself that a decision on that occasion was acquiesced in by Mix, who conceded that these were well known metallurgic processes, and a claim to them was withdrawn, &c. He says: "It is all important to remember the distinction between the invention of Mix and Perkins. In Mix's application the edges of the joint both of the bowl and the handle were square, being fastened together by a rivet, some solder and the stroke of a die-press. The corresponding edges of the joint in Perkins' invention were beveled, or undercut, so as to make a dovetailed joint, the tongue of the one part being inserted in a corresponding groove in the other. In Mix's patent there is this defect, that a strain applied to bowl and handle simultaneously would easily separate them by loosening both solder and rivet, but in Perkins' the addition of the dovetail joint enables it to bear such a strain without injury, &c."

In this state of the case, all the papers were duly laid before me, and after due notice of the time and place of hearing being given to the parties, arguments in writing by their respective attorneys were filed, and the case submitted. The first question is as to the proof of the invention on the part of Mix, the appellant. He relies principally on three witnesses, John J. Marcy, E. Y. Bull, and William Mix. Marcy was the machinist. He says that he had been in the employ of Mix, for three years; that the first iron spoon ever made, to his knowledge, with the handle made of iron wire was made by witness in the first part of December, 1856; that he made it by the direction of said Garry I. Mix; that the spoon as made by him in December, 1856, was made as follows: One end of the handle, viz. the one taken hold of by the hand, was swaged into its form by a drop and die and the other, viz. the one attached to the bowl was formed by forging and filing and by other tools. At the end was a cavity in the handle of the spoon fitted to receive a tongue

formed on the bowl of the spoon, which dovetailed under the iron of the handle of the spoon. The bowl of the spoon was like the ordinary spoon, the tongue came from the back part of the bowl and ran up about half an inch into the handle, and fitted into it and was riveted on, and then soldered. One end of the spoon, he says, to which he refers, was made by a drop and die, and one end by hand. The witness says, that he made a die for forming the handle of spoons like the one he had described sometime in the month of May, 1857. He thinks about the middle of the month, he commenced it, and Mr. Bull finished the work. The dies which he made at that time left a cavity to receive the tongue of the bowl of the spoon, and also made two rivets from the wire, leaving them solid, forming a part of the handle. Witness also states that he made a die in March, 1857, in all other respects resembling the spoon described by him except with no handle to receive the tongue, and no tongue upon the bowl.

William Mix, in his deposition, states in substance the same facts, in describing the spoon made in the early part of December, 1856. Bull, the other witness, testifies that the iron spoon was made by Mix in the month of December, 1856, as stated by him, that "the bowl was made with a tongue from three-eighths to half an inch long which fitted into a cavity in the handle, the handle being made with a brace, and also with a cavity to receive the tongue of the bowl. The handle of the spoon was riveted to the bowl, but I don't know whether it was soldered or brazed. The metal of the handle closed over the end of the tongue projecting from the bowl," &c.

The commissioner supposes that the testimony of Bull does not sustain that of the two other witnesses Marcy and Mix, but shows a fatal discrepancy and unsoundness, and that this is offered to be explained away by Mix, &c. Neither of these witnesses state expressly whether it was the square edged joint or the beveled edge. Whether however they are or are not substantially alike it is not of importance to decide. I do not understand that it is denied. Two of them, Marcy and Mix, prove that the handle of the spoon was fitted to receive a tongue formed on the bowl of the spoon which dovetailed under the iron of the handle of the spoon; and the other that "the metal of the handle closed over the end of the tongue, projecting from the bowl." I cannot discover any substantial discrepancy, between these witnesses. I understand the words used by the two witnesses as applicable to the point of fact about which they were testifying. The only sensible meaning which can be given I think is, that the metal of the handle closed over the tongue in agreement with which the other witnesses say, that it thus dovetailed. I cannot conceive of a fastening or jointing that could be stronger, or even so strong,—an equivalent of course for any other, used by the appellee.

Why then is not this invention of appellant discovered in December, 1856, substantially identical with that of the appellee, which was not discovered until sometime in May, 1857, several months after? As to the testimony on the subject of the comparative strength of the spoon (if relevant), I do not think it sufficient to set aside the positive proof by these witnesses of the invention as proved.

If the proof shows that the appellant was the original and first discoverer of the invention involved in the issue in this case, has he lost his right to claim the same by abandonment? To sustain this ground a number of authorities are referred to by the counsel for the appellee in his argument. The application of this doctrine of abandonment depends upon the circumstances of each case, and implies laches on the part of the original inventor. All the cases cited will appear to turn on such principles. The specific grounds upon which the abandonment is supposed to appear are not clearly stated. As before noticed, the commissioner has stated that an application was made in the year 1857, in which case one of the claims of appellant was withdrawn, and a certain concession made as to the novelty, that is, that the V shaped joint in itself was well known, &c. There can be nothing conclusive in this act. This, however, is a very different thing from the claim set up and proved in this case. If such a claim was made he had certainly a right to withdraw it and reform it to meet the truth of his case without prejudice. As to the ground of want of diligence, the proof is that the appellee had early notice of the claim of the appellant, and that he meant to apply for a patent, and although the circumstances are that though for a short time he suspended the use of this particular mode, he was experimenting diligently, and at length discovered that a suitable die would perfect this mode of making spoons, which he accordingly had made and used in connection therewith, and shortly afterwards made the application in the present case. He was certainly entitled to a reasonable time to experiment and perfect his invention. It seems, then, that he has been rather unfortunate than negligent in making his application for a patent.

My opinion therefore is that the decision of the commissioner is erroneous, that priority of invention ought to have been awarded to the appellant and a patent granted to him accordingly.